# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL OUTLEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 13 CV 1583** |
| | ) | **Judge Joan H. Lefkow** |
| **CITY OF CHICAGO, PAUL MAZUR,** | ) | |
| **Individually, ALAN STARK, Deputy** | ) | |
| **Commissioner of the Department of Water and** | ) | |
| **Individually, and THOMAS POWERS,** | ) | |
| **Commissioner of the Department of Water and** | ) | |
| **Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Michael Outley's third amended complaint against the City of Chicago and

individual defendants Paul Mazur, Alan Stark and Thomas Power alleges discrimination on the

basis of race as well as retaliation in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 and 42 U.S.C. § 1983.[1]  (Dkt. #48.)

Defendants now move to dismiss the third amended complaint in part pursuant to Federal Rule

of Civil Procedure 12(b)(6).  Defendants argue that 1) some of Outley's claims are beyond the

scope of his EEOC charges, 2) some of his claims are time-barred, 3) he failed to state a valid

claim of retaliation, 4) he failed to properly plead claims against the city, 5) the Equal Protection

Clause does not protect against retaliation, 6) the individual defendants cannot be sued under

Title VII, § 1981 or § 1983, and 7) punitive damages cannot be brought against the city.  (Dkt.

---

[1] This court has jurisdiction under 28 U.S.C. § 1331 and venue is appropriate under 28 U.S.C. § 1391(b).

#53.)  For the reasons set forth herein, the motion will be granted in part and denied in part.  The defendants' motion to strike Outley's oversized brief is denied.

## BACKGROUND[2]

Michael Outley, an African-American man, began working for the City of Chicago in 1987, as an operating engineer in the Department of Aviation.  In 1993, he transferred to the Department of Water Management as an operating engineer.  The Department of Water Management oversees approximately eleven pumping stations and two filtration plants.  Soon after his transfer, Outley began to serve as Acting Assistant Chief Operating Engineer at the Lexington pumping station.  In 1994, Outley applied for the posted position of Chief Operating Engineer and was denied the promotion.  In 1998, Outley received a promotion to a permanent position of Assistant Chief Operating Engineer, a position he had been filling in an acting capacity for five years.  In each of the years 2010, 2011 and 2012, the City of Chicago posted announcements for the position of Chief Operating Engineer in the Department of Water Management, and each year Outley applied.

The application process included a multiple choice test, a technical exam and an oral interview related to the technical aspects of the position.  Outley passed each portion of the application process every year, and satisfied all the requirements for the promotion.  Yet, he never received the promotion.  Meanwhile, since 2010, six Caucasian applicants with fewer qualifications and less experience were promoted to Chief Operating Engineer.  In fact, at the time Outley filed his third amended complaint, all of the Chief Operating Engineers within the Department of Water were Caucasian.  Outley alleges that defendants acted willfully and in bad faith in their failure to promote him.

_____

[2]  The facts in this section are taken from the well-pleaded allegations in Outley's third amended complaint.  They are presumed true for the purpose of resolving the present motion.  *See Barnes* v. *Briley,* 420 F.3d 673, 677 (7th Cir. 2005).

In October 2012, Outley filed a complaint with the city's human resources department, alleging that he had been denied a promotion because of his race. His immediate supervisor, defendant Mazur, was informed of his complaints and met with human resources regarding the allegations. Following this meeting, Mazur asked Outley to submit proof of a medical condition, which he did. Nonetheless, Mazur requested a pre-disciplinary hearing for insubordination, alleging that Outley had failed to provide the requested proof. Following these events, on October 12, 2012, Outley filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he had been denied a promotion on the basis of race.

Less than a month later, Mazur again accused Outley of insubordination, along with "failure to perform work" and "conduct unbecoming" regarding an incident that allegedly occurred on September 11, 2012, and requested another pre-disciplinary hearing. (Dkt. 48 at 5.)

Outley requested to work on Thanksgiving Day in 2012 and was denied an overtime opportunity. Several days later, on December 2, 2012, the EEOC sent Outley a right to sue letter. On December 13, Mazur requested a third pre-disciplinary hearing for "insubordination, violation of safety protocols and violation of a written directive." (*Id.*) At the time Outley filed his complaint he had not yet had a disciplinary hearing or received any disciplinary action based on Mazur's three pre-disciplinary hearing requests. These requests remain pending.

In March 2013, an Assistant Chief Operating Engineer, Chris Houlihan, made racially charged and intimidating threats to Outley. Houlihan told Outley that he had been transferred to the Lexington pumping station to intimidate and threaten Outley. Shortly afterwards, Outley was transferred against his wishes to the Mayfair pumping station, and then transferred to the Jardine

pumping station. He requested to be returned to the Lexington station, and his request was ignored by defendants.

On May 9, 2013, Outley filed a second charge with the EEOC, alleging retaliation based on his complaints to human resources and the EEOC. The EEOC sent him a right to sue letter on his second charge on August 13, 2013. Finally, Outley filed a third charge on October 25, 2013 with the EEOC, again alleging retaliation, after the City of Chicago conducted an administrative investigation. He received a right to sue letter based on that charge in January 2014.

Outley alleges that defendants have shown a pattern and practice of discrimination and retaliation against him. He alleges that defendants acted willfully and in bad faith and seeks compensatory damages, prejudgment interest, attorneys' fees and costs.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp*. v. *Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court takes as true all facts in the complaint and draws all reasonable inferences in favor of the non-moving party. *Dixon* v. *Page*, 291 F.3d 485, 486–87 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp*. v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That is, the allegations in the complaint must be "enough to

raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ---, 135 S. Ct. 346, 346, --- L. Ed. 2d --- (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . . [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

## ANALYSIS

I.     **Validity of Outley's Title VII claims**

A.     **Whether Outley's Failure to Promote Claims are Within the Scope of His EEOC Charges**

Defendants argue that Outley's failure to promote claims, with the exception of the October 2012 instance referenced in his first charge, should be dismissed because they are beyond the scope of his EEOC charges. Generally, "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek* v. *W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This exhaustion requirement has two purposes: to promote resolution of the dispute by settlement and to ensure that defendants receive adequate notice of the charges against them. *Id.*; *see also Peters* v. *Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). Courts must keep in mind, however, both the goals of Title VII and the fact that EEOC charges are generally submitted without legal counsel. *Cheek*, 31 F.3d at 500. A Title VII plaintiff is not required to allege in an EEOC charge each and every fact that supports his or her complaint. *Welch* v. *Cook County Clerk's Office*, 36 F. Supp. 2d 1033, 1038 (N.D. Ill. 1999). Rather, additional claims must be "reasonably related to the allegations" included in the

EEOC charge. *Id*. "This standard is a liberal one." *Teal* v. *Potter*, 559 F.3d 687, 692 (7th Cir. 2009). The claims are sufficiently related if the allegations describe the same conduct and involve the same individuals. *Id.; see also Lacy* v. *Americtech Mobile Comm. Inc.,* 965 F. Supp. 1056, 1063-64 (N.D. Ill. 1997) (allegations of prior instances of failure to promote were found to be within the scope of the plaintiff's EEOC charge.)

Here, Outley's October 12, 2012 EEOC charge alleged that defendants failed to promote him based on his race. The prior instances of failure to promote (1994, 2010 and 2011) are allegations of the same conduct by the same individuals and are therefore within the scope of Outley's first EEOC charge.

### B. Whether Outley States a Claim for Retaliation

To establish a plausible Title VII claim for retaliation, a plaintiff must allege (1) that he participated in a protected activity, (2) that he suffered an adverse employment action, and (3) that there is a causal connection between the protected activity and the adverse employment action. *Culver* v. *Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citations omitted). It is undisputed that Outley engaged in protected activity by complaining to the City's Department of Human Resources and filing charges of discrimination. Defendants argue Outley's allegations are not sufficiently material to be considered adverse employment actions.

At this stage in litigation, a plaintiff need only plead "facts to create an inference of a plausible claim," he need not "prove a prima facie retaliation claim." *Vega* v. *Chicago Park Dist.,* 958 F. Supp. 2d 943, 955 (N.D. Ill. 2013) (citation omitted). In Outley's complaint, he alleges that he was "threatened," accused of insubordination, denied overtime opportunities, transferred to a less desirable work location, and that pre-disciplinary hearings were called threatening his employment. (Compl. at 30, 54.) "Adverse actions can come in many shapes

and sizes." *Knox* v. *State of Ind.,* 93 F.3d 1327, 1334 (7th Cir. 1996). Whether something constitutes an adverse employment action is fact-specific and therefore more appropriate for summary judgment. *Morris* v. *City of Chicago*, 2011 WL 5868162 3 (N.D. Ill. 2011) (noting that "before a court can determine whether an adverse action rises to the level required by the statute, there needs to be greater factual development of the claim"). Indeed, the cases cited by defendants on this issue were decided after discovery and are factually distinguishable from the case at hand. *See Crady* v. *Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993); *Burlington N. & Santa Fe R.R. Co.* v. *White*, 548 U.S. 53, 68 (2006); *Claude* v. *American Stores Co.,* 76 F. Supp. 2d 883, 885 (N.D. Ill. 1999); *Roney* v. *Ill. Dept. of Transp.,* 376 F. Supp. 2d 857, 866-67 (N.D. Ill. 2005). Outley has sufficiently pleaded that he suffered an adverse employment action.

Defendants also maintain that Outley has not alleged a "but-for" causal connection. A plaintiff must also plead he was retaliated against as a result of his protected activity. *Vega* v. *Chicago Park Dist.,* 958 F. Supp. 2d 943, 955 (N.D. Ill. 2013). Circumstantial evidence, such as suspicious timing, can support an inference of retaliation. *Id.* Outley alleges in his complaint that the threats of discipline, intimidation, denial of overtime, location transfer and other adverse employment actions occurred after his October 2012 complaint with Human Resources. Furthermore, Outley explicitly alleges that these actions were a direct result of his complaints of discrimination. (Compl. ¶¶ 46, 47). For these reasons, Outley has sufficiently states a valid claim for retaliation.

### C. Whether Outley's Title VII Claims are Time-Barred

To bring a Title VII claim, a plaintiff must file a charge with the EEOC within 180 or 300 days of the alleged unlawful employment practice, depending on the state. 42 U.S.C. § 2000e-

5(e)(1). The charging period in Illinois is 300 days. *Groesch* v. *City of Springfield*, 635 F.3d 1020, 1024 n.2 (7th Cir. 2011) (citations omitted). The time period begins to run when the defendant has taken the action complained of and the plaintiff knows of the injury. *Sharp* v. *United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).

Defendants correctly argue that any Title VII failure to promote discrimination claims of conduct occurring prior to December 17, 2011 (300 days prior to his October 2012 EEOC charge) are time barred. Outley attempts to save the time-barred claims with the continuing violation doctrine, which operates to allow what would otherwise be time-barred allegations to be brought in a complaint if the time-barred acts are linked to a timely discriminatory act. *Welch* v. *Cook County Clerk's Office*, 36 F. Supp. 2d 1033, 1039-40 (N.D. Ill. 1999). The continuing violation doctrine does not apply to discrete events, which must be filed within the limitations period. *Lucas* v. *Chicago Transit Auth.*, 367 F.3d 714, 724 (7th Cir. 2004). The Supreme Court has explained that if a plaintiff complains of discrete acts, each act "starts a new clock for filing charges," and the clock starts on the date that the act took place. *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 102, 122 S. Ct. 2061, 2066, 153 L. Ed. 2d 106 (2002) ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."). The Court has specifically noted "failure to promote" as an example of a discrete act. *Id*. at 114. Therefore, conduct that occurred prior to December 17, 2011 is not actionable.

Outley claims that the alleged retaliation began in October 2012, and therefore his retaliation claim falls well within the actionable time period, as he filed his retaliation-related EEOC charge within 300 days on May 9, 2013.

**D.      Whether Defendants Are Personally Liable Under Title VII**

Individual defendants cannot be held personally liable under Title VII.  *Gastineau* v.

*Fleet Mortg. Corp.,* 137 F.3d 490, 493-94 (7th Cir. 1998).  Outley's complaint implicates the

individual defendants Stark, Powers and Mazur in Counts I and II, which are both based on Title

VII.  Counts I and II are therefore dismissed as to the individual defendants.

**II.      Validity of Outley's §§ 1981 and 1983 Claims**

**A.      Whether Outley's §§ 1981 and 1983 Claims are Time-Barred**

Section 1981 claims are subject to a four-year statute of limitations.  *Dandy* v. *United*

*Parcel Service, Inc.,* 388 F.3d 263, 269 (7th Cir. 2004).  Outley does not complain of any

conduct relevant to his § 1981 claim that occurred prior to February 28, 2009.  Thus, his § 1981

claim (Count III) is timely under the statute of limitations.

 Section 1983 claims are subject to a two-year statute of limitations.  *Harris* v. *Illinois,*

753 F. Supp. 2d 734, 740 (N.D. Ill. 2010).  Here, the two-year period began on February 28,

2011.  Conduct that occurred prior to that date would be untimely, unless the continuing

violation doctrine applies.  As discussed above, the continuing violation doctrine allows a

plaintiff to bring in conduct that falls outside of the statute of limitations if that conduct can be

linked to timely conduct.  *Welch* v. *Cook County Clerk's Office*, 36 F. Supp. 2d 1033, 1039-40

(N.D. Ill. 1999).  Because Outley only alleges incidents of failure to promote to support his racial

discrimination claims, the continuing violation doctrine does not apply here.  *See supra* Part I.C;

*Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 102, 122 S. Ct. 2061, 2066, 153 L. Ed. 2d

106 (2002).  Conduct that occurred prior to February 28, 2011 is time-barred for purposes of

Outley's § 1983 claim.

## B.     Whether Outley States a Claim Against the City

To validly state a claim for municipal liability under § 1983,[3] a plaintiff must allege that the violation of his rights was caused by either (1) an express municipal policy; (2) a widespread municipal custom that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policymaking authority.  *McCormick* v. *City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).  "[M]unicipal liability is limited to action for which the municipality is actually responsible."  *Waters* v. *City of Chicago*, 580 F.3d 575, 580 (7th Cir. 2009) (citations omitted).

Outley alleges that individual defendants Powers and Stark have "ultimate policy making authority."  (Compl. ¶ 23.)  Whether a city official has "final policymaking authority" is determined by state law.  *Limes-Miller* v. *City of Chicago*, 773 F. Supp. 1130, 1136 (N.D. Ill. 1991).   According to Illinois law, only the City Council and its Department of Personnel have the authority to determine City employment policy.  *Id.*  Plaintiff has not alleged that either of those entities took or sanctioned action against him.

Moreover, while Outley does allege there are no minorities in the position of Chief Operating Engineer (Compl. ¶ 12), he does not allege that any other person was denied a promotion on the basis of race.  He has not pleaded any specific facts to support a widespread custom of discrimination.  Therefore, Outley has not alleged a plausible claim against the city under § 1983 or § 1981, and those claims are dismissed as to the Defendant City of Chicago.

## C.     Whether Outley States a Claim Against the Individual Defendants

Personal liability under § 1981 must be based on a defendant's personal involvement. *Petrovic* v. *Enterprise Leasing Co. of Chicago, LLC.*, No. 12 C 3779, 2013 WL 1200220 at *2

---

[3] There is no claim under § 1981 against a municipality.  *De* v. *City of Chicago*, 912 F. Supp. 2d 709, 725 (N.D. Ill. 2012).  Instead, a plaintiff must "assert a cause of action against state actors under § 1983 to remedy violations of the civil rights secured by § 1981."  *Id.*

(7th Cir. 2013). The same is true for § 1983. *Gossmeyer* v. *McDonald,* 128 F.3d 481, 494-95 (7th Cir. 1997). Contrary to defendants' argument, Outley alleges that each individual defendants was personally involved in the decision to deny him a promotion. Specifically, he alleges that "Defendants Stark, Powers and Mazur, in their respective capacities as decision makers over Plaintiff's performance evaluations and promotions, caused or participated in the deprivation of Plaintiff's rights under 42 U.S.C. § 1981." (Compl. ¶ 61). This paragraph was incorporated by reference into Count IV, his § 1983 claim. These allegations are sufficient to survive a motion to dismiss.

### D. Whether Retaliation is Actionable Under the Equal Protection Clause

The Equal Protection Clause does not guarantee the right to be free from retaliation. *Boyd* v. *Ill. St. Police*, 384 F.3d 888, 898 (7th Cir. 2004) (citations omitted). Therefore, to the extent Outley's § 1981 and § 1983 claims (Counts III and IV, respectively) invoke retaliation, they are dismissed. Possible recovery for alleged retaliation is limited to Outley's Title VII claims, specifically Count II.

## III. Punitive Damages

Municipalities are immune from liability for punitive damages under § 1983. *See City of Newport* v. *Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981). The same is true for both § 1981 and Title VII. *See Ferguson* v. *Joliet Mass Transit Dist.,* 526 F. Supp. 222, 224 (N.D. Ill. 1981); *Adams* v. *City of Chicago*, 865 F. Supp. 445, 447 (N.D. Ill. 1994). This immunity may be waived by either federal or state law. *Kolar* v. *County of Sangamon,* 756 F.2d 564, 567 (7th Cir.1985). Illinois, however, has reaffirmed immunity for its local governments. *See* 745 ILCS 10/2–102. Therefore, to the extent that Outley's complaint seeks punitive damages against defendant City of Chicago, it is stricken.

## CONCLUSION AND ORDER

For the foregoing reasons, Outley's Title VII claims (Counts I and II) are dismissed with prejudice as to the individual defendants. Conduct that occurred prior to December 17, 2011 is time-barred for the purposes of Outley's Title VII claims. Outley's §§ 1981 and 1983 claims (Counts III and IV) are dismissed without prejudice as to the city, and to the extent they are based on retaliation. Conduct that occurred prior to February 28, 2011 is time-barred for purposes of Count IV. Outley's request for punitive damages is stricken from the complaint.

Defendant City of Chicago is directed to answer Counts I and II, limited to conduct that occurred later than December 17, 2011. Individual defendants are directed to answer Counts III and IV (Count IV is limited to conduct that occurred later than February 28, 2011).

Date: March 10, 2015

_____
U.S. District Judge Joan H. Lefkow